IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WAYNE CLARK,

        Plaintiff,

vs.                                             No. Civ. 02-881 LH/RHS

JOHN SHANKS, et al.

        Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

      This matter is before the Court on Correction Department Defendants' Motion for Summary Judgment [Doc. No. 14], filed October 22, 2002. Defendants CMS and Dr. Allen did not file a separate motion for summary judgment, however, on October 25, 2003, the Court directed the defendants to submit a Martinez report on ten specific issues and notified the parties that the Martinez report might be used in deciding whether to grant summary judgment on Plaintiff's claims. The Martinez reports were filed January 6, 2003, by Defendants John Shanks and Ron Lytle [Doc. No.19 ], and on January 7, 2003 by Defendants CMS Medical Services and Dr. Allen [Doc. No. 20]. Plaintiff was informed by the Order directing submission of the Martinez report that he had thirty days after service of the reports to respond. No response was filed. This case was referred to the undersigned United States Magistrate Judge on April 9, 2003 to submit proposed findings of fact and recommendation for disposition of this case pursuant to 28 U.S.C. § 636(b)(1). The undersigned United States Magistrate Judge, having

-1-

considered the pleadings, the Martinez reports and the relevant law, recommends that summary judgment be granted in favor of all of the defendants.

This is a pro se, in forma pauperis civil rights action brought under 42 U.S.C.§ 1983 by Plaintiff Wayne Clark (Clark). Clark was incarcerated at the Central New Mexico Correctional Facility ("CNMCF") on March 16, 2002 when he allegedly slipped on a piece of tile that had fallen off the wall in one of the shower areas in the Reception and Diagnostic Center ("RDC") and fell, hit his head, and lost consciousness. Plaintiff alleges that Defendants violated his Eighth Amendment rights by: (1) acting with deliberate indifference to his safety by knowingly allowing the showers to be poorly maintained ; (2) refusing to appropriately respond to his complaints of dizziness, pain and numbness; and (3) denying him medical treatment by refusing to allow him to be treated by an outside ( independent) physician or specialist. Plaintiff seeks compensatory damages in the amount of ten million dollars and future medical costs and also asks the Court for injunctive relief requiring Defendants to send him to a medical specialist for treatment. Because Plaintiff has been released from incarceration, his claim for injunctive relief is now moot.

**Summary Judgment Standard:**

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. Sports Unlimited, Inc. v. Lankford Enterprises, Inc., 275 F.3d 996, 999 (10th Cir. 2002)(citing Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented. Id.

Defendants initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Adler v Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)(citations omitted). Because plaintiff bears the burden of proof at trial, defendants need not "support [their] motion with affidavits or other similar materials negating [plaintiff's] claims or defenses." Celotex Corp. v Catrett, 477 U.S. 317, 323-324 (1986). Instead, defendants can satisfy their obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim. Adler, 144 F.3d at 671(citing Celotex, 477 U.S. at 325).

If defendants properly support their motion, the burden then shifts to plaintiff, who must set forth specific facts showing that there is a genuine issue for trial. Id. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. See Cone v Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994).

Before analyzing defendant's motion for summary judgment, the Court notes that plaintiff is not represented by counsel. Pro se pleadings, including those related to summary judgment, must be liberally construed. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). This court holds pro se pleadings to a less stringent standard than those prepared by a lawyer. See Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the court may not assume the role of advocate for the pro se litigant and need not accept as true unsupported conclusory allegations. Hall, 934 F.2d at 1110. Plaintiff's pro se status, in and of itself, does not prevent this court from granting summary judgment. Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

In pro se prisoner litigation, the Tenth Circuit has endorsed a procedure that has come to be known as a <u>Martinez</u> report wherein the defendant prison entity undertakes a factual investigation related to the events at issue. See <u>Martinez v. Aaron</u>, 570 F.2d 317, 318-19 (10th Cir. 1978). The Martinez report is treated like an affidavit. <u>Green v. Branson</u>, 108 F.3d 1296, 1303 (10th Cir. 1997) (citing <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111(10th Cir. 1991)).  The Court may not, however, "accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." <u>Green</u>, 108 F.3d at 1303. The pro se complaint, when sworn under penalty of perjury like the complaint in this case, is also treated as an affidavit and serves as evidence at the summary judgment stage. <u>Hall</u>, 935 F.2d at 1111.

**Discussion:**

Mr. Clark claims that the condition of the RDC showers and the medical care provided to him after his slip and fall were so egregious as to violate his Eighth Amendment right to be free of cruel and unusual punishment. To prevail on his Eighth Amendment claims, Plaintiff must establish that the condition complained of is sufficiently serious to implicate constitutional protection and that prison officials acted with deliberate indifference to inmate health or safety. <u>Despain v. Upholl,</u> 264 F.3d 965, 971 (10th Cir. 2001).  In order to satisfy the first requirement, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)(quoting <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991)).  The Supreme Court has explained the second requirement "entails something more than mere negligence...[b]ut something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  <u>Farmer</u>, 511 U.S. at 835. An official's failure

to alleviate a significant risk that he should have perceived, but did not perceive, is not deliberate indifference. Id. at 837-838.

At the time of Plaintiff's accident, Defendant John Shanks was the Corrections Department's Deputy Chief of Operations, Defendant Ron Lytle was the Warden of CNMCF, Defendant Correctional Medical Services, Inc.("CMS") was the Department's medical services contractor and Defendant Dr. Allen was an employee of CMS. Defendants CMS and Dr. Allen filed a Martinez report in which they admitted that CMS had employed a Dr. Allen, but that Dr. Allen was employed at a different facility than the one in which Plaintiff was incarcerated. A review of Plaintiff's medical records fails to locate any treatment notation by Dr. Allen, however, Plaintiff was treated on several occasions by physician's assistant, Alan Chernov, who may have been the person Plaintiff believed was Dr. Allen. The Court has been unable to locate any evidence that Dr. Allen was involved in caring for the Plaintiff.

**Claim One--Deliberate Indifference to Unsafe Showers:**

Plaintiff's Complaint alleges that in the shower area at the RDC "there is poor or no maintenance, the lights do not work and the tile [is] falling off the walls because of this fact. All Defendants are aware of this maintenance flaw and have still done nothing to correct his situation."

The Martinez Report filed by the Correction Department Defendants included copies of inspection, maintenance and repair records and reports for the shower area from January 1, 2002 through March 31, 2002. The Monthly Loss Control Inspections reports indicate that on January 8, February 18, and March 7, 2002, the showers needed to be cleaned and some of the lights needed to be replaced. There were no entries regarding loose or cracked tile in these

documents. The Weekly Housing Unit Inspection reports also indicated that the showers needed cleaning, but did not note any cracked or broken tiles. There were no reports of any inmates, other than Plaintiff, slipping or falling in any RDC shower area during the specified time period. The Daily Housing Inspection reports do not show that broken tiles were noted by correctional officers.

The maintenance records provided to the Court include written work orders and logs of verbal requests for work on the shower area. They reflect that the work requests were primarily concerned with clogged drains, lack of hot water and lights which were out. There is one entry indicating that tiles in one of the shower stalls were replaced on February 10, 2002. There are no entries in the logs regarding loose or cracked tiles. The records reflect that most of the requested work was performed on the same day

The two officers responsible for the Daily Housing Inspection reports on the day before and the day of the Plaintiff's accident filed affidavits as part of the Martinez report to this Court. Officer Scott Lynn inspected the shower area on March 15, 2002 and found it to be unclean but did not observe any cracked or loose tiles. Lynn's affidavit states that it was his practice to look for loose tile during his daily inspections because they create a safety and security concern, not only because of the possibility that they might cause a fall but because they could be used as weapons or shanks by inmates. If he had observed any loose or cracked tiles, he stated he would have noted that in the inspection report, informed his supervisors, and notified the Physical Plant Manager or his maintenance staff. Officer Marvin Garcia inspected the area on  March 16, 2002 and found the showers to be clean and in good condition on that date. His affidavit also stated

that it was his practice to look for loose or cracked tiles for the same reasons given by Officer Lynn.

At about 4:15 p.m. on March 16, Officer Lynn and Officer Garcia found Plaintiff apparently unconscious on the floor of the shower. A radio call was made indicating that an inmate was down and needed assistance, and Sergeant Andrew Sweeny and Officer Matthew Maestas responded. Affidavits from all four officers stated that they inspected the shower area and found no loose or cracked tiles at that time. Although the Complaint and the affidavits are in conflict about the presence of loose tile on the date of the accident and it would therefore be improper for the Court to make a factual finding on that issue at the summary judgment stage of litigation, the inspection reports, maintenance reports and the affidavits are evidence that the defendants did not have actual notice of hazardous shower conditions.

Clark has presented no evidence that the medical defendants had knowledge of a substantial risk of serious harm to any inmate because of loose tiles or generally unsafe conditions in the shower area. The Martinez report filed by CMS and Dr. Allen reflected that they had no documents pertaining to and no responsibility for repair and maintenance of the facility. Plaintiff has not alleged that there was any action that the medical defendants could have taken to reduce risk to inmates. Clark has failed to show a material issue of triable fact regarding his unsafe shower claim against the medical defendants, and they are entitled to summary judgment on this claim.

An affidavit filed by Defendant John Shanks states that he was unaware of unsafe conditions in the RDC showers. He explained that he had not inspected the RDC showers at CNMCF and that he worked at the NMCD administrative office in Santa Fe, N.M., not at

-7-

CNMCF in Los Lunas, N.M.  Plaintiff failed to establish that Shanks personally participated in the injurious conduct, See Olson v Stotts, 9 F.3d. 1475, 1477 (10th Cir. 1993),  and summary judgment in his favor on this claim is therefore appropriate.

Defendant Ron Lytle, the Warden at CNMCF , also filed an affidavit in which he indicated that he did not know that  shower tiles were allegedly falling off the walls onto the shower floor or that any lights were not working.  He stated that he did know that the areas were older and might need maintenance.  He claimed that CNMCF had reasonable inspection and maintenance procedures in place intended to avoid or alleviate any risk of harm to inmates while using the showers.

No grievances or complaints from any person (including staff, visitors and inmates), other than the one filed by Plaintiff, were received about the shower area during the time period covered by the Martinez report.   The shower areas were routinely inspected by correctional staff.  The only entry in the maintenance logs showing that tiles needed to be replaced showed that they were replaced on February 10, 2002, before the Plaintiff's accident.  The Martinez report provides  the Court with evidence that Lytle  was not deliberately indifferent to a substantial risk of serious harm to any inmate. Without  actual knowledge of such a risk, Defendant Lytle cannot be held liable under the Eighth Amendment and he is entitled to summary judgment on this claim.

**Claim Two--Deliberate indifference to medical needs**:

Plaintiff alleges that "since I have complained on numerous occasions about dizziness, pain and numbness and nothing has been done to ease this problem or to see why it even exists Plaintiff's [E]ighth [A]mendment rights have been violated and a degree of cruel and unusual

punishment has occurred ."   He claims that his accident created serious medical needs that were inadequately treated.

On March 16, 2002, when Plaintiff reported to medical staff that he had fallen in the shower, he complained of head, back and neck pain. He was sent via ambulance to St. Joseph's Emergency Room where he received x-rays of his cervical spine, right shoulder and right wrist. The x-rays showed no fractures. Plaintiff was diagnosed with contusions and muscle strain and given prescriptions for Tylenol #3 for pain and Norflex for neck strain.   Plaintiff was then returned to prison. On four subsequent occasions in March of 2002 he was examined by prison medical staff and was prescribed Ibuprofen for pain.

On April 2, 2002, Plaintiff was transferred from CNMCF to the Central Minimum Restrict Unit ("CMRU").  He made several requests for medical care at CMRU, claiming that the Ibuprofen was not helping his pain, and on April 17, 2002, Plaintiff was examined by a physician who restricted his activity and continued him on the same medication regimen. Plaintiff continued to complain of pain and had several contacts with medical staff.  An MRI was ordered by the physician who examined Plaintiff on May 15, 2002.  On August 7, 2002, the MRI was performed and the report concluded that Plaintiff had a small disc protrusion at the L-5 S-1 level and a tiny disc protrusion at L-4-L-5 level. Plaintiff continued to have frequent contact with medical personnel at CMRU and on October 31, 2002, Plaintiff saw neurosurgeon, Dr. Mark Erasmus, for a consultation.  Dr. Erasmus diagnosed Plaintiff with degenerative joint disease, recommended conservative treatment and ruled out surgery as a treatment for his condition.  Plaintiff was paroled on November 1, 2002.

A claim for unconstitutional medical care has two components, one objective and one subjective. Farmer, 511 U.S. at 834, Thompson v Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002). Under the objective prong, a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Sealock v. Colorado, 218 F.3d 1205,1209 (10th Cir. 2000) (quoting Hunt v Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)). When Plaintiff was examined at the emergency room on the day of the accident and when he was seen repeatedly by prison medical personnel, including physicians, during his stay at CNMCF and CNRU, he was not found to have any condition which mandated treatment and he displayed no symptoms that obviously required a doctor's attention, therefore the objective prong of the test was not met. There is evidence that Plaintiff had a previous back injury, limited range of motion, and a significant scar on his back prior to his accident. While it is possible that the accident might have aggravated some preexisting condition, the symptoms that Plaintiff presented with after his fall were not explained by either the x-rays or the MRI results. No physician opined that Plaintiff had seriously injured himself in the accident or that he had any previous back problem that mandated treatment. No symptoms were observed by lay persons which obviously necessitated medical treatment. The subjective component was also lacking. The subjective element inquiry requires that Defendants must have known and disregarded an excessive risk Farmer, 511 U.S. at 836-837. Plaintiff did receive treatment for his discomfort, as well as diagnostic testing. There was a delay between the time the MRI was ordered and the test was performed, however, when the results of the MRI were analyzed by a neurosurgeon, no change in the conservative treatment which prison medical personnel had been following was recommended. Medical staff saw Plaintiff

at the prison twenty-five times between his fall and his parole. There is no evidence in the record that the treatment or lack of treatment provided to Plaintiff involved any risk to his health.

Furthermore, the Correctional Defendants cannot be held liable for the medical decisions made by the staff unless they independently demonstrated deliberate indifference to Plaintiff's medical needs. The record contains no evidence that they prevented Plaintiff from seeking or receiving medical care. Supervisory prison officials are entitled to rely on the expertise of the prison medical staff. See, eg. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Plaintiff has not shown the existence of a triable issue of fact as to these defendants' deliberate indifference and this claim will therefore be dismissed.

The claim against CMS and Dr. Allen for denying Plaintiff medical care or providing inadequate medical treatment also fails. Plaintiff was seen repeatedly by medical staff who prescribed medication for his discomfort and who gave him "light duty" and "medical lay in" passes. Medical tests and a consultation with a specialist were ordered. Plaintiff has provided the Court with no evidence that his medical care put him at a substantial risk of harm. The actions of the medical defendants do not demonstrate deliberate indifference under the Eight Amendment and this claim will be dismissed with prejudice.

**Claim Three--Denial of medical treatment by an independent physician:**

Plaintiff finally alleges that his Eighth Amendment rights have been violated because he was not allowed to see an outside physician for his symptoms. Plaintiff received medical care from a number of health care providers, including a neurosurgeon, during his incarceration. "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."

Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).  Defendants are entitled to summary judgment as a matter of law on this claim and it will be dismissed with prejudice.

**RECOMMENDED DISPOSITION**

The Court recommends that summary judgment be granted in favor of defendants and that this action be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file written objections to such proposed findings and recommendations with the Clerk of the United States District Court.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE